Bhupinder Singh v. Ashcroft Good morning, your honors. Vinay Chhaya for the petitioner. Morning. This case is before the court because petitioner applied for relief from removal based on incidents occurring in India in 1998 and 1999, but was denied his requested relief. Relief from... Was denied relief from removal. Relief from removal is what took the place of the withholding, right? I'm speaking in general, like both restriction and asylum. Go ahead. He was denied not because his testimony regarding those events in India was found to be incredible, but because the judge had doubts about his identity. The judge's identity doubts were unwarranted simply because, A, they were based on a critical error in reading the photocopy of his passport the petitioner presented at his hearing, and also because those doubts were based on a very selective reading of documentation regarding an arrest petitioner had had in the United States in 2000. Forging identification documents. A charge which was dismissed, your honor. But nevertheless, when arrested, wasn't he and the others he was with found with a large amount of cash and a lot of different identification cards, and he claimed that he had one identification card on him because he put on the wrong pair of pants? That's true, your honor, but if you look at page 151 of the administrative record, contained in that page is a portion of the police report of the arrest, and that portion of the police report constitutes a chart listing each of the people arrested on the occasion in question. I think it's significant to note that both of Petitioner's co-arrestees, both people arrested with Petitioner, have multiple aliases listed under their names, but no such aliases are listed under Petitioner's name, which leads to two conclusions. A, that regardless of whatever else Petitioner had on his person, whether in his pants or in his wallet or anywhere else on him, he was not in possession of any kind of identification document bearing his photograph and any name other than Bhupinder Singh. It also leads to the conclusion that the police had no reason to believe that he had used any name other than Bhupinder Singh. And it is important also to note that those charges were dismissed, and while the government argues in its brief that those charges may have been dismissed for any number of reasons unrelated to the merits of the case against Petitioner, I think it's significant to note the absence in the record of any evidence that Petitioner was convicted or pled to any lesser charge, and also any absence, frankly, of any evidence that the charge was dismissed for any kind of reasons unrelated to the merits of the case against him. Going back to the issue of the immigration judge's error in reading the copy of the passport Petitioner presented, what happened was that Petitioner presented a photocopy of his passport at his hearing but did not have his original. He maintained that the original was not in court because it was actually still in India. The judge found this implausible in his oral decision because he said basically the passport was issued on May 10, 1999, so it's implausible that a passport issued May 10, 1999, would not be in the possession of someone who claims to have left India in September of 1999. But I think an examination of page 168 of the – In fact, if he's trying to make an honest exit, he'd have to have his passport, right? Yes. But he left out of fear for his life, and he did maintain in court that the passport was in India, and the judge found it implausible because he felt that the passport had been issued several months before his claimed date of departure. However, if you look at page 168 of the administrative record, you'll find that the date of issuance of the passport is not May 10, 1999, as the judge maintains in his oral decision, but in fact is October 5, 1999. The Indian custom of recording dates is like that of many other countries, but it's different from the American custom in that the hyphenated string denoting a date begins – the first numeral generally indicates the day of the month, the second indicates the month, and the last indicates the year. Accordingly, the petitioner's birth date is listed on that same page as 23-10-1977 to indicate that he was born on the 23rd of October, 1977. Similarly, the date of issuance is listed as 5-10-99, indicating not that it was issued May 10, 1999, but October 5, 1999. And while it might be implausible for someone whose passport was issued several months before he left the country of issuance not to have the passport on him, it's highly plausible. In fact, it's pretty much a certainty that someone who left a country – or someone whose passport was issued the month after he left the country wouldn't have it on his person when he left. So I think that inasmuch as the doubts of the immigration judge were based on suspicions regarding the whereabouts of the passport, I think they were solely based on the misreading of the passport and therefore were unwarranted. When did your client enter this country? There's a discrepancy there, too, I think. He entered on September 26, 1999. While he initially indicated that he had entered the country in September of 1998, he amended that in his application. And he did state upon his arrest that he entered in 1998 with a passport and a visa. So at a minimum, we have an acknowledgment by him that he deliberately misidentified the date of his entry at the time of his arrest. Out of admission that he did so out of fear and a bad decision to take bad advice. So he's willing to lie to avoid adverse immigration consequences. I think that that imputes a lot more deliberate thought on the part of the petitioner than probably occurred at the time, which is early in the morning at a police station. It doesn't change the reality of it, though. He gave two different dates. He gave what he now says is the wrong date on two separate occasions. He can't explain the second one as a mistake. So he said, I guess he said that I panicked and I lied because I was just arrested and I wanted to avoid something with regard to my immigration status. But the bottom line of it, he's willing to lie to save his immigration status. And isn't that a sufficient basis all by itself for the immigration judge to say, I can't believe what he says? Well, I think the most that can be said about it is that he's willing to lie to save his life. Was his life in danger after his arrest? Excuse me, sir? Was his life in danger after his arrest? He certainly didn't lie to protect himself from those pleas. You might be saying he was willing to lie to protect himself from being sent back to India. But I think that's the less likely inference to be drawn from somebody who's just been arrested in the early morning hour. I'm still not quite getting it. I guess I understand your position. But it seems to me, if you're telling me he's willing to lie to avoid being killed upon being sent back from India, there's no reason why he's not willing to lie at his immigration hearing in front of the immigration judge. And indeed, there's no reason for us to believe that he is in danger of being killed if he's sent back to India because he's willing to lie. Your Honor, the only time he's admitted to any sort of lie was that one time and he admitted it forthrightly at his hearing and explained that he was frightened. Well, he had to admit it because if he had come in at the date he stated, 1998, then his story couldn't hang together because he talks about being arrested and abused in India in 1999. He's got a glaring inconsistency. Well, the immigration judge also brings that up, saying that indeed the events he testified to could not have occurred. However, that's not entirely true, first of all. Is it true that if he came in in 1998, he could have been arrested in India after that time? That is true, but he testified to having been arrested and abused on two separate occasions, one of which occurred before his – one of which occurred before either of these disputed dates of entry and the other one which occurred afterwards. So then we have to believe he fabricated the second one, and that doesn't help his credibility much. If you were to believe that – if a court were to conclusively find that he entered the country in September of 1998, which the immigration judge didn't, all the immigration judge said was if this happened, then these events couldn't have occurred. He never – the immigration judge never made a factual finding that – as to the actual date of entry. Oh, no, but the judge did express, you know, doubt about whether he was telling the truth, right? In effect, he said, I don't know which one to believe. He just said the Petitioner indicated both dates. The immigration judge, right? No, no, no. The immigration – no, no. He maintained before the judge that his arrival was in September of 1999. I know that, but the immigration just – you say the immigration judge made no finding on it, but the immigration judge did note that there were two inconsistent dates given by the Petitioner, right? That's in the – that's in the judge's decision, although maybe, you know, he didn't choose one over the other. Although the – although the two – the two inconsistent dates – of the two inconsistent dates, only one was testified to at hearing. I know that, but my point is the immigration judge didn't know which to believe. For instance, as Judge Clifton says, the immigration judge's decision says, if indeed the Respondent entered the U.S. in September 24, 1998, then the events he testified to cannot have occurred, which is obviously true. Well, only – only one set of the events, Your Honor. And in the absence of a conclusive finding is to – That ends the story. Because even if – if you say, okay, the first set of events could have taken place, he testified to the second set of events. And if the immigration judge decides, but that couldn't have happened, the credibility determination is over. Certainly – certainly, Your Honor. But he – but the judge never decided that that couldn't have happened because he never actually decided what – he never – he never concluded that the – that the correct date of entry was the earlier one. But the one thing he could conclude with some certitude was that at – at times, Mr. Singh had an inability to tell the truth to authorities. He also stated to the police in Hartford that he had a visa and passport back at his house, which was not true. I – I think at times might overstate it slightly, Your Honor. I think – I get – I get the impression from the record that this was – that this was sort of held together as one – one admittedly false statement, the date of entry and his – All right. You can see you're way over your time, but we probably – I – I – You used it up for you, so we'll give you a minute for rebuttal, all right? Okay. Good morning, Your Honors. I'm Carol Federighi. I represent the Attorney General in this matter. In Mr. Singh's testimony, there's one substantial omission and one substantial direct contradiction, both of which go to the heart of his asylum claim and fully support the immigration judge's adverse credibility finding. First, as Your Honors have recognized, Mr. Singh was unable to produce conclusive proof that he is who he says he is and was unable to credibly explain why he was unable to prove – principally in the form of his original passport. Second, Mr. Singh changed his statements about the date that he arrived in the United States so that the date conforms to his story about events that allegedly occurred in India. Specifically, he originally said he entered the United States in 1998, which would have been before his second arrest in India. Although he later said he entered in 1999, he did not provide a compelling explanation for why he changed his story, making it reasonable to assume that he did so to enhance his asylum claim. Returning to the first point, Mr. Singh's inability to confirm his identity goes to the heart of his asylum claim and that he's unable to prove that he is actually the Bhupinder Singh who allegedly experienced persecution in India. Moreover, his inability to confirm his identity means that we cannot determine if he is ineligible for asylum, for example, because he participated in persecution in India or in terrorist activities of some sort. To establish his identity, Petitioner produced an unclear copy of his passport. He was unable to credibly explain why he did not have the original. Today, for the first time, Petitioner argues that the immigration judge misread the date on the passport, that, in fact, it was not issued in May of 1999 but in October of 1999. This was never brought up at the hearing or in any previous briefing. In any event, even if it was issued in October 1999, after he left India, there was still plenty of time for him to get the passport from his parents before the hearing, which was in 2001, almost two years later. He got other things from his parents. They mailed him various other documentations, including his original birth certificate and other original documents. He claimed during the hearing, first he said that his parents had mailed the passport. That was on page 95 of the administrative record. Then later he said, no, DHL, the courier service that he was using, wouldn't send a passport. That's on page 129 of the immigration, of the administrative file. This conflicting and unconvincing explanation is sufficient for the immigration judge to conclude that there's something fishy about why he can't produce the original passport. In addition, the fact that he was relying on a copy of his passport is particularly suspicious in light of the circumstances in which he was arrested in Connecticut. As your honors have recognized, he was arrested in possession of multiple identification documents, a lot of cash, and a price list for licenses, all of which tended to suggest that he was in the business of forging identification documents. These circumstances cast additional doubt on the validity of the passport copy that he is relying on. In addition, the contradictions and implausibilities in Mr. Singh's testimony concerning the circumstances of his arrest further suggests that he has something to hide about his activities on that day and was perhaps trying to conceal his involvement in forgery. These contradictions include testifying that he was arrested with only two forms of identification, which he said on page 112 of the administrative record, when the police report said he had multiple forms of ID on him, many more than just the two. At the hearing, he was read the police report. Even after hearing the police report, he still insisted that he just had two pieces of ID on him, and he did not address the contradiction between his story and what was in the police report. He also said that he was arrested, that when he was arrested, he was heading to New York from New Britain, Connecticut. He was arrested in Hartford, Connecticut, which is in the opposite direction from New Britain than New York is. When asked how he got to Hartford, if he was going from New Britain to New York, he just said, and this is on page 137 of the administrative record, he just said, well, that's a way to go there, which is bizarre and incorrect. It's completely in the opposite direction. So he's unable to provide any sort of explanation for that. And as your honors have recognized, he also said when he was arrested, he said he had a passport and a visa at home, and in fact that was untrue. So all of these circumstances cast considerable doubt on his identification as Bhupinder Singh. And as your honors know, in immigration proceedings, in most cases, the judge has to rely only on the testimony of the individual as to what happened to him. If considerable doubt is cast on the individual's claim to be a particular person, he's unable to prove identification, that is the sufficient basis or substantial evidence for the immigration judge to doubt the credibility of the applicant. In addition, there's this controversy or conflict, direct conflict about the dates. When he was originally arrested, he stated to the police officer and the INS officer that interviewed him that he entered the United States in September of 1998. He also said that on his asylum application originally. He later changed his story and said that he entered in September of 1999. This makes it possible. He also testified that he was arrested and beaten in India in April of 1999. Obviously, that couldn't have happened if he entered in 1998. So by changing the date to 1999, he substantially enhanced his asylum claim. He, when asked why he had changed the dates, again, he was unable to provide a compelling explanation. First, he blamed the fact that the asylum application said 1998 on the attorney that had helped him prepare it. Then when he was questioned about the fact that he had also told the INS officer and the police officers that he entered in 1998, he then said that he was told to lie by a companion that was with him. As Your Honors have pointed out, he does show a willingness to lie to the authorities whenever it suits his purpose. And that... There was no express adverse credibility finding made with respect to the two dates of the entry here, is there? I think there was, Your Honor. Let me just check the immigration judge's decision. Maybe it wasn't... I didn't think it was made. I thought it was made because it was so obvious on the face of the record. Yeah. Well, on page 51, the immigration judge says... Page? Page 51. Okay. The immigration judge says the respondent's case raises two questions. The first of these questions is what, in fact, is the respondent's identity. The second question is when and how did the immigration judge decide when, in fact, did the respondent enter the United States? So that is his sort of overview. These are the major areas of credibility problems. And then let me just get to where he talks about the date. I guess he picks up on that on page 54, huh? Yeah, 54. And let's see if it investigates. Again, he doesn't say specifically, I believe, or I conclude that the respondent was lying when he said he entered in 1999. But he does discuss at length on 54 and 55 the problem with the date and then says, in sum, the concomination of the factors that the court has mentioned leads the court to doubt whether the respondent is, in fact, Mr. Bhupinder Singh. And then, oh, here it goes. It also leaves the court to doubt when exactly the respondent entered the United States. So I think that's a pretty express credibility finding on that issue. In sum, the immigration judge gave concrete, specific reasons why he doubted the petitioner's credibility. In particular, there was substantial doubt about his identity and also doubt about the date that he entered the United States, which date was critical to making his asylum claim hang together. Therefore, this record does not compel a finding that petitioner was credible. Therefore, the immigration judge's decision should be upheld and the petition dismissed. Thank you. Thank you. No other questions? No. Ruben?  I have a question as to what was found on him during his arrest at hearing and the police report. I'm actually ‑‑ I don't think it's that clear that there is a contradiction. I believe the question he was asked on, which I think would be clear on, I think, page 1 or 12 of the administrative record, is whether what was found in his pants at the time of the hearing, whereas the police officer's narrative, which details the items that were found on his person, talks about what was found on search of Bhupinder Singh. I believe that's administrative record, page 153. It's not clear from the police report, from the phrase on Bhupinder Singh, whether those documents were found, where exactly on petitioner's pants those documents were found. Regarding the whole ‑‑ the issue of where his finding was going and West Hartford being the opposite direction from New York, petitioner testified first that he didn't know exactly where they were taking him to show him around in New York. There's nothing in the record to indicate whether they were planning to go directly to New York. Given that there's no indication where in New York they were going, there's no indication sort of what ‑‑ I mean, it's perfectly possible to want to go head north in order to hit a different route that might be less traveled, depending on where you're going in New York. But Hartford's pretty far east from New York. But if you want to go upstate, Your Honor. Sometimes the long way around is quicker, but Hartford's pretty far east of New York. At any rate, I'm not ‑‑ I just don't think that the alleged inconsistency or any potential discrepancy in this whole West Hartford, West Britain thing falls under Viloria Lupe's V.I.N.S. as substantial evidence in support of an adverse credibility finding. Sort of like driving from here to Los Angeles by way of Reno, right? Something like that. I don't think ‑‑ I think the distance that that would entail are seemingly greater than the detour here. That strikes me as a good way to go, though. Yeah, but I've been to Hartford, so. And I've been to Reno. I'm not going back. All right. Do you want to sum up? Yeah, certainly, Your Honor. I just don't think that anything in the police or immigration reports really severely casts into doubt the question of petitioner's identity. And I certainly don't think ‑‑ it seems kind of unfair to accuse the petitioner of lying before. To hold him against the petitioner for lying earlier on during his arrest, but not to credit any of his testimony regarding the once he came clean about it. And there was no actual finding as to when he entered the country. All right. I believe we fully understand your position. The laws of government. We thank both counsel for your argument. This case is now submitted for decision. Final case on today's argument calendar is, if I could find my docket sheet. Here it is. Here it is. Charanjit Singh versus Ashcroft.
judges: Tashima, Clifton, Leighton